UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------ X
JASON MCDUNN,                              :   Case No.: _____
                                           :
       Plaintiff,                         :   **COMPLAINT**
                                           :
  -against-                               :   **DEMAND FOR JURY TRIAL**
                                           :
EQM MIDSTREAM PARTNERS, LP,                :
THOMAS F. KARAM, MICHAEL A.                :
BRYSON, KENNETH M. BURKE, DIANA M.         :
CHARLETTA, ROBERT J. COOPER, KIRK R.       :
OLIVER, and LARA E. WASHINGTON,            :
                                           :
       Defendants.                        :
------------------------------------------ X

      Plaintiff, Jason McDunn ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

      1.    This is an action brought by Plaintiff against EQM Midstream Partners, LP ("EQM" or the "Partnership") and the members of the Partnership's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with EQM, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed merger between EQM and Equitrans Midstream Corporation ("Equitrans") (the "Proposed Merger").

      2.    On February 26, 2020, EQM and Equitrans entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which the EQM common unit will be converted into the right to receive 2.44 shares of Equitrans common stock (the "Merger Consideration").

1

3. On March 30, 2020, in order to convince EQM unitholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading registration statement on a Form S-4 (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for EQM, Equitrans, the Pro Forma Combined Company; and (ii) the valuation analyses performed by EQM's financial advisor, Evercore Group L.L.C. ("Evercore"), in support of its fairness opinion.

5. The special meeting of EQM unitholders to vote on the Proposed Merger has not been scheduled yet but it is forthcoming since the Proposed Merger is expected to close mid-year 2020 (the "Unitholder Vote"). It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Unitholder Vote so Plaintiff can cast an informed vote and properly exercise his corporate suffrage rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to EQM's unitholders sufficiently in advance of the Unitholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1305 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316

9.    Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, EQM's common units trade on New York Stock Exchange, which is headquartered in this District, EQM hired Evercore as a financial advisor and D.F. King & Co., Inc. as a proxy solicitor for the purposes of the Proposed Merger, both of which are also located in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

10.    Plaintiff is, and at all relevant times has been, a unitholder of EQM.

11.    Defendant EQM is natural gas gatherer and holds a significant transmission footprint in the Appalachian Basin. The Partnership's common units trade on the NYSE under the ticker symbol "EQM".

12.    Individual Defendant Thomas F. Karam is the Chairman of the Board and the Chief

Executive Officer of EQM. Karam is also the Chairman and Chief Executive Officer of Equitrans.

13. Individual Defendant Michael A. Bryson is, and has been at all relevant times, the Presiding Director of EQM.

14. Individual Defendant Kenneth M. Burke is, and has been at all relevant times, a director of EQM and Equitrans.

15. Individual Defendant Diana M. Charletta is, and has been at all relevant times, a director of EQM. Charletta is also the President and Chief Operating Officer of both EQM and Equitrans.

16. Individual Defendant Robert J. Cooper is, and has been at all relevant times, a director of EQM.

17. Individual Defendant Kirk R. Oliver is, and has been at all relevant times, a director of EQM. Oliver is also the Senior Vice President and Chief Financial Officer of both EQM and Equitrans.

18. Individual Defendant Lara E. Washington is, and has been at all relevant times, a director of EQM.

19. The Individual Defendants referred to in ¶¶ 12-19 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with EQM they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**I.  Background and the Proposed Merger**

20. EQM, formerly EQT Midstream Partners, LP, owns, operates, acquires and develops midstream assets in the Appalachian Basin. The Company's segments include Gathering and Transmission. The Gathering segment primarily includes high pressure gathering lines and the

4

Federal Energy Regulatory Commission (FERC)-regulated low pressure gathering system. Transmission includes EQM's FERC-regulated interstate pipeline and storage business. The Company's operations are primarily focused in southwestern Pennsylvania and northern West Virginia. As of December 31, 2016, the Company provided midstream services to EQT Corporation (EQT) and a range of third parties across 24 counties in Pennsylvania, West Virginia and Ohio through its two assets: the gathering system, which delivered natural gas from wells and other receipt points to transmission pipelines, and the transmission and storage system, which served as a header system transmission pipeline.

21. Equitrans is a natural gas gatherer in the United States. The Company provides midstream services to EQT Corporation and multiple third-parties in Pennsylvania, West Virginia, and Ohio. The Company operates through three business segments: Gathering, Transmission and Water. It provides natural gas gathering, transmission and storage services under contracts. Its midstream assets are primarily located in the Appalachian Basin. The Company's gathering system delivers natural gas from wells and other receipt points to transmission pipelines. Its transmission and storage system delivers gas to local demand users and interstate pipelines for access to demand markets. Its water services assets consist of water pipelines, impoundment facilities, pumping stations, take point facilities and measurement facilities that support well completion activities and collect flowback and produced water for recycling or disposal.

22. On February 27, 2020, EQM and Equitrans issued a joint press release announcing the Proposed Merger, which states in relevant part:

> 15-Year Gas Gathering Agreement with EQT
>
> Share Buy Back of 25.3 Million ETRN Shares from EQT
>
> ETRN to Acquire EQM Midstream Partners

New Dividend and Capital Allocation Policy

CANONSBURG, Pa.--(BUSINESS WIRE)-- Equitrans Midstream Corporation (NYSE: ETRN) and EQM Midstream Partners, LP (NYSE: EQM), today, announced the following actions and information, along with ETRN's pro forma financial and capital expenditure forecast:

- EQM and EQT Corporation (EQT) executed a 15-year gas gathering agreement covering Pennsylvania and West Virginia
- Minimum Volume Commitment (MVC) steps-up to 3.0 Bcf per day and incremental MVC increases begin with Mountain Valley Pipeline's (MVP) in-service
- Present value, using 10% discount rate (PV10), of MVC revenue is approximately $2.1 billion higher under new 15-year gathering agreement than under prior MVCs with EQT
- ETRN forecasts greater than 70% of total revenue from firm reservation fees and MVCs beginning in 2021
- EQT benefits include the ability to optimize combo development, lower per unit costs over time, and easing of approximately $250 million of letter-of-credit posting requirements
- ETRN will purchase and retire 25.3 million shares of ETRN common stock from EQT for $52 million of upfront cash, with the remaining consideration, which represents $196 million PV10, to be paid through reduced gathering fees in the two years following MVP's in-service
- ETRN to acquire all outstanding public EQM common units in a 100% share-for-unit transaction, approved by the EQM Conflicts Committee, in which each outstanding public common unit of EQM would be exchanged for 2.44 shares of ETRN common stock
- ETRN intends to pay a $0.60 per share annual dividend, which allows the company to quickly de-lever and provides significant forecasted cash flow after total capital expenditures and dividends
- ETRN forecasts $1.8 billion of cumulative free cash flow and $1.0 billion of cumulative retained free cash flow, each a non-GAAP supplemental financial measure, over 2021-2023
- "Today is a transformational day for E-Train. We are taking actions designed to rapidly and materially strengthen our balance sheet," said Thomas F. Karam, ETRN chairman and chief executive officer. "We have executed a 'blend, broaden, and extend' contract with EQT, which will strengthen our partnership and position both companies for success over the long-term.

"In addition, we are simplifying our structure to a single C-Corp, as well as acquiring 25.3 million shares of ETRN from EQT. As a single C-Corp entity, E-Train will have transparent corporate governance, a larger investor base, and will strive to be among the leading ESG companies in the midstream sector," Karam continued.

Diana Charletta, ETRN president and chief operating officer, added "The new gathering agreement with EQT replaces over a dozen separate gathering agreements and serves to strengthen our ongoing partnership, a scenario that will be beneficial for both companies now and in the future. By simplifying our relationship, EQT can effectively execute their combo-development strategy, which in turn will lead to improved ETRN capital efficiency through better planning and optimized system designs. Equitrans' world-class operations, coupled with our remarkably stable cash flows, simple structure, and transparent path forward supports our ongoing commitment to deliver shareholder value."

The agreement has been approved unanimously by EQM's Board of Directors, upon the recommendation of the Special Committee of the Board. EQM's largest unitholder, AT&T Inc., has agreed to vote in favor of the transaction. The acquisition is expected to be completed around the middle of 2020, subject to the receipt of regulatory approvals and the satisfaction of customary closing conditions. The consummation of the transaction is not subject to any financing contingencies.

. . .

ETRN Proposed Acquisition of EQM

ETRN and EQM have agreed to a share-for-unit exchange via merger (Merger) in which each outstanding public common unit of EQM would be exchanged for 2.44 shares of ETRN common stock. The exchange ratio represents a 3% premium based on the volume weighted average price for EQM and ETRN over the 20 days ending February 26, 2020. The Merger is expected to close mid-year 2020, subject to customary closing conditions and the approval of ETRN shareholders and EQM unitholders.

After giving effect to the Merger and the purchase of 25.3 million ETRN common shares from EQT, there will be approximately 430 million ETRN common shares outstanding. Pro forma for the transactions, the remaining 25.3 million ETRN common shares owned by EQT will represent approximately 6% of total ETRN common shares outstanding.

Other highlights of the Merger include:

- EQM will become a wholly owned subsidiary of ETRN upon the closing of the Merger
- ETRN projects near zero cash taxes through at least 2023 and minimal cash taxes through at least 2026
- The simplified C-Corp structure is expected to generate a broader investor base and the increased float is expected to improve trading liquidity
- Single C-Corp public security provides enhanced corporate governance
- Increased opportunity for additional index inclusions

The terms of the Merger were negotiated, reviewed, and approved by the Conflicts Committee of the Board of Directors of the general partner of EQM and approved by the Board of Directors of the general partner of EQM and the Board of Directors of ETRN. The EQM Conflicts Committee is composed of independent members of the Board of Directors of EQM's general partner. The Merger is subject to approval by ETRN shareholders and EQM unitholders.

Citi and Guggenheim Securities, LLC acted as financial advisors and Latham & Watkins LLP acted as legal advisor to ETRN. Evercore acted as financial advisor and Richards, Layton & Finger, P.A. acted as legal advisor to the Conflicts Committee of EQM.

23.     The Merger Consideration represents inadequate compensation for EQM units. Indeed, EQM beat revenue expectations by nearly $7 million just months after issuing a quarterly dividend of $1.16 per unit. Given the Partnership's strong recent financial performance and bright economic outlook, it is imperative that unitholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for unitholders to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Merger.

## II.     The Proxy Omits Material Information

24.     On March 30, 2020, Defendants filed the materially incomplete and misleading Proxy with the SEC.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Partnership's unitholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Partnership's unitholders to make an informed decision in connection with the Proposed Merger.

<u>The Misleadingly Incomplete Financial Projections</u>

25.     First, the Proxy omits critical financial projections, including the net income projections for EQM, Equitrans, and the Pro Forma Combined Company (the "Net Income Projections"). Defendants elected to summarize multiple sets of financial projections, but they

8

excised and failed to disclose the readily available Net Income Projections. By disclosing certain projections in the Proxy and withholding the Net Income Projections, Defendants render the summary table of projections on page 57 of the Proxy materially incomplete and provide a misleading valuation picture of EQM, Equitrans, and the Pro Forma Combined Company. Simply put, net income projections are irreplaceable when it comes to fully, fairly, and properly understanding a company's projections and value.

26.     Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the projections relied upon by Evercore and the Board but have omitted the Net Income Projections. This omission renders the summary of the projection table and each entity's financial picture in the Proxy misleadingly incomplete.

The Misleadingly Incomplete Summary of Evercore's Fairness Opinion

27.     Second, the Proxy describes Evercore's fairness opinion and the various valuation analyses performed in support of their opinion.  Defendants concede the materiality of this information in citing Evercore's fairness opinion and their valuation analyses among the "material" factors the Board considered in making its recommendation to EQM unitholders. Proxy at 54; *see also* Proxy at 77 ("Set forth below is a summary of the material financial analyses performed by Evercore and reviewed with the EQM Conflicts Committee on February 26, 2020,

in connection with rendering its opinion to the EQM Conflicts Committee."). However, the summary of Evercore's fairness opinion and analyses provided in the Proxy fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, EQM unitholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Evercore's fairness opinion in determining how to vote on the Proposed Merger. *See* Proxy at 77 ("Considering the tables below without considering the full narrative description of the financial analyses, including the methodologies and assumptions underlying the analyses, could create a misleading or incomplete view of Evercore's financial analyses."). This omitted information, if disclosed, would significantly alter the total mix of information available to EQM's unitholders.

28. In summarizing Evercore's *Peer Group Trading Analysis* and *Precedent Merger and Acquisition Transactions Analysis*—for both EQM and Equitrans—the Proxy fails to disclose the individual multiple of each company or transaction utilized in the analyses. A fair summary of a comparable companies or transactions analysis requires the disclosure of the individual multiple for each company or transaction used in the analysis. Merely providing a mean and median of the multiples that a banker calculated without any further information is insufficient, as unitholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to present the Merger Consideration in the most favorable light. Accordingly, the omission of this material information renders the summary of this analyses provided in the Proxy misleading.

29. Next, in summarizing the *Discounted Distribution Analysis* and *Discounted Dividend Analysis* prepared by Evercore, the Proxy fails to disclose the following key information used in the analyses: (i) the inputs and assumptions underlying the discount rate ranges; (ii) the

inputs and assumptions underlying the terminal yields; (iii) EQM's projected terminal distribution; (iv) ETRN's projected terminal dividend; and (v) the actual terminal values calculated.

30.     These key inputs are material to EQM unitholders, and their omission renders the summary of the *Discounted Cash Flow Analysis* incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis (much like the *Discounted Distribution Analysis* performed here) a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" Id.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

Id. at 1577-78.

31.     Without the above-omitted information EQM unitholders are misled as to the reasonableness or reliability of Evercore's analysis, and unable to properly assess the fairness of the Proposed Merger.  As such, these material omissions render the summary of the *Discounted*

11

*Distribution Analysis* included in the Proxy misleadingly incomplete.

32. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the Unitholder Vote, Plaintiff will be unable to cast an informed vote regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act**

33. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

35. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

36. The omission of information from a proxy will violate Section 14(a) if other SEC

regulations specifically require disclosure of the omitted information.

37. Defendants have issued the Proxy with the intention of soliciting the Partnership's common unitholders' support for the Proposed Merger. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for EQM, Equitrans, and the Pro Forma Combined Company; and (ii) the valuation analyses performed by Evercore in support of its fairness opinion.

38. In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Partnership's unitholders although they could have done so without extraordinary effort.

39. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that Evercore reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by Evercore, as well as their fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had

knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Evercore's analyses in connection with their receipt of the fairness opinion, question Evercore as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

40.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Partnership's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Partnership's financial projections.

41.     EQM is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

42.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of EQM's unitholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's

equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of EQM within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Partnership, and participation in and/or awareness of the Partnership's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Partnership, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Partnership, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They

were thus directly involved in preparing this document.

47. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the special meeting of EQM unitholders to vote on the Proposed Merger or consummating the Proposed Merger, until the Partnership discloses the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result

of their wrongdoing;

  C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

  D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 6, 2020           **MONTEVERDE & ASSOCIATES PC**

                     */s/ Juan E. Monteverde*
                    Juan E. Monteverde (JM-8169)
                    The Empire State Building
                    350 Fifth Avenue, Suite 4405
                    New York, NY 10118
                    Tel: (212) 971-1341
                    Fax: (212) 202-7880
                    Email: jmonteverde@monteverdelaw.com

                    *Attorneys for Plaintiff*